NOT FOR PUBLICATION                                                            CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALFRED A. ALBURTUS, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 05-5997 (JAP) |
| COMMISSIONER OF SOCIAL SECURITY, | : |
|  | : **OPINION** |
| Defendant. | : |

APPEARANCES:

Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07605
    Attorney for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
Vernon Norwood, Esq.
Special Assistant United States Attorney
Office of the United States Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY 10278
    Attorneys for Defendant

PISANO, District Judge.

Alfred A. Alburtus appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying, in part, his request for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 423 and 1383.  Plaintiff contends that he was disabled as of August 4, 2001, and disputes the Commissioner's finding that Plaintiff was disabled as of February 1, 2002.  This Court has jurisdiction to review the matter under 42 U.S.C. § 405(g) and decides the matter without oral argument.  See Fed. R. Civ. P. 78.  For the reasons that follow, the Court affirms the Commissioner's decision.

I.  **Background**

*A. Plaintiff's Personal and Medical History*

Plaintiff is a sixty-five year old man with a high school education.  He underwent a leg amputation (below the right knee) after a car accident in 1958 and has since been fitted with several prostheses.  Plaintiff was employed for over thirty years as a bank research analyst/CRT operator, a semi-skilled position calling for accuracy and speed.  During the course of Plaintiff's seven-hour workday, he sat for approximately five or six hours, stood or walked for one or two hours, and occasionally lifted and carried up to ten pounds.  (AR 51, 75).  After being laid off on August 4, 2001, Plaintiff received unemployment benefits for thirty-nine weeks and never returned to work.  (AR 148, 151, 154).  Plaintiff testified that during the few months prior to being laid off, he experienced ongoing pain due to rashes and sores on his stump, numbness of the left foot, pain in his left foot, and drowsiness due to pain medications.  (AR 148-50).  Plaintiff alleged that these conditions interfered with his ability to work at the required pace without producing errors.  (AR 149-50).

Plaintiff's relevant medical history begins with an evaluation on April 16, 2001, by his treating physician, Dr. Marc Goldstein ("Dr. Goldstein").  In a report to the State Agency on April 28, 2002, Dr. Goldstein described this visit as a routine exam.  (AR 90).  On November 6, 2001, Plaintiff returned complaining of "some discomfort in the left hip and back."  Id.  His physician attributed this pain to Plaintiff's prosthesis, which caused him to put excessive pressure on his left leg.  Id.  Local over-the-counter treatment was recommended.  Id.

On February 1, 2002, Plaintiff made another visit to Dr. Goldstein, who found that Plaintiff's pain had become more severe.  (AR 90).  The physician noted discomfort in the lumbosacral area, left hip pain, and knee pain, as well as some radiation with positive straight leg raising.  Id.  X-rays of his hip taken on March 6, 2002 revealed normal results, however, and Dr. Goldstein reported that Plaintiff's left knee and lumbosacral spine were also normal.  (AR 91).  Dr. Goldstein described Alburtus's physical deterioration over the past several years as one of "progressive discomfort, pain, and more inability to ambulate."  Id.

On June 14, 2002, Dr. Jean Messihi ("Dr. Messihi"), a State Agency consultative physician, examined Plaintiff.  According to Dr. Messihi, Plaintiff could walk approximately two blocks and stand for about thirty minutes.  (AR 93).  She also noted problems over Plaintiff's left lower extremity because of shifting weight, including heels spurs, left hip, and left ankle discomfort.  (AR 93).  She found full flexibility in Plaintiff's right knee; ability to walk with a cane, though with a pronounced  limp; a limited  range of movement in the spine; and no ability to squat, or to walk on the heel or the toes of the left side.  (AR 94).  She also reported no focal neurological deficits.  Id.  Dr. Messihi summarized Plaintiff's condition as one of "progressive inability to stand or ambulate."  (AR 95).

3

On July 8, 2002, Dr. Burton Levine ("Dr. Levine"), a State Agency physician, conducted a Physical Residual Functional Capacity Assessment ("RFC Assessment") based on the evidence in the record up to that point. Dr. Levine found that Alburtus could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand or walk for a total of at least two hours in a workday, sit for about six hours in an eight-hour workday, and was not limited in his ability to push and/or pull. (AR 102). Plaintiff's RFC Assessment also showed that he could never climb, kneel, crouch, or crawl, but could occasionally balance and stoop. (AR 103).

Plaintiff next underwent a neurological evaluation by Dr. Angela Adams ("Dr. Adams"). On October 16, 2002, Plaintiff reported to Dr. Adams that his lower back and leg problems had begun ten years ago, but that recently the pain had worsened from intermittent episodes of lower back pain and stiffness in his legs to constant pain in his back and legs, sometimes radiating into his foot. Dr. Adams found left-sided lumbar paraspinal muscle tenderness. (AR 109). She also noted that Plaintiff described episodes of numbness in his left foot and weakness of the left leg. Id. A motor exam revealed that Alburtus's muscle bulk and tone were normal. (AR 110). His coordination, station, gait, and tandem gait were also normal. Id. His muscle strength was 5/5 bilaterally and symmetrically, except for his left hamstring and tibialis anterior which were 5/-5. Id. His deep tendon reflexes were 2+ diffusely and symmetrically, except for the lower extremities. Id. Dr. Adams concluded that Plaintiff's clinical presentation was most consistent with L5 and S1 radiculopathies, along with possible orthopedic problems. Id. An electromyogram/nerve conduction velocity (EMG/NCV) study of Plaintiff's left leg and hip was performed on November 5, 2002, but the results were normal. (AR 111-12).

On May 30, 2003, Dr. Goldstein completed an RFC Assessment of Plaintiff. Dr.

4

Goldstein indicated that Plaintiff had limitations in his ability to lift/carry as a result of his leg amputation, back pain, and hip pain. (AR 115). Plaintiff's ability to stand and walk was restricted by his limp, as well as his back and hip pain. (AR 116). Dr. Goldstein found that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, and he had some discomfort while sitting. Id. Plaintiff had poor balance and limitations in reach, pushing, and pulling. (AR 117). His impairments also caused restrictions from heights and moving machinery. Id. After this visit, Dr. Goldstein referred Plaintiff to an orthopedic physician for physical therapy of the lumber spine and left shoulder. In January 2004, Plaintiff was diagnosed with sciatica and bursitis by orthopedic specialist Dr. Jonathan Archer. (AR 120).

### B. Procedural History

On March 14, 2002, Plaintiff filed an application for DIB, alleging disability as of August 4, 2001. The Social Security Administration (the "SSA") denied Plaintiff's application initially and upon reconsideration. Following Plaintiff's request, a hearing was held on June 12, 2003, before Administrative Law Judge ("ALJ") John M. Farley ("Farley"). On July 19, 2003, Plaintiff was granted disability benefits as of October 1, 2002, pursuant to a partially favorable decision by ALJ Farley. Plaintiff sought Appeals Council review and was denied on March 8, 2004.

Plaintiff filed an appeal to the United States District Court for the District of New Jersey on April 23, 2004. The matter was remanded for further administrative proceedings because the audio tape of the hearing was inaudible and a transcript could not be prepared. On October 4, 2004, the Appeals Council remanded the unfavorable portion of the decision to the ALJ for a *de novo* supplemental hearing. This supplemental hearing was held before ALJ Farley on December 15, 2004. On January 28, 2005, the ALJ issued another partially favorable decision, finding

Plaintiff disabled as of February 1, 2002, but again denying his claim of an onset date of August 4, 2001.

The Appeals Council denied Plaintiff's request for review on October, 31, 2005, and thus the ALJ's ruling became the final decision of the Commissioner. Plaintiff now contests the ALJ's holding on the grounds that the decision is not based on substantial evidence of record. Specifically, Plaintiff argues that (1) the ALJ failed to articulate an evidentiary basis for his RFC Assessment and (2) the ALJ did not follow the Commissioner's mandates with regard to the evaluation of Plaintiff's testimony.

## II.  Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); § 1383(c)(3) ("The final determination of the Commissioner of Social Security. . . shall be subject to judicial review as provided in section 405(g) . . . ."); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993). More than a "mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial evidence may be less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

Some types of evidence will not be "substantial." For example,

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

> countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

The reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has noted, access to the Commissioner's reasoning is necessary for a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.

### A. The Record Must Provide Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. and 42 U.S.C. § 1381 et seq., a claimant is required to provide objective medical evidence in order to prove his

7

disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 42 U.S.C. § 1382(c)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections . . . 42 U.S.C. § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a claimant cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. See Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves *constitute* disability"). Instead, a claimant must provide medical findings that show that he has a medically determinable impairment of such severity that he is unable to engage in any substantial gainful activity. See id.; see also 42 U.S.C. § 423(d)(1)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless 'medical signs' or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to

work).

### B. The Five-Step Analysis for Determining Disability

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists. See 20 C.F.R. §§ 404.1520, 416.920. For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability; and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. See Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the Code of Federal Regulations ("Listing of Impairments"). See 20 C.F.R. §§ 404.1520(d), 416.920(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant cannot satisfy the requirements of the third step, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment. See 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is found to be capable of returning to his previous line of work, then

he is not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(e), 416.920(e). Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work in the national economy, considering his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(f), 416.920(f). The Dictionary of Occupational Titles classifies the different levels of physical exertion, namely, sedentary, light, medium, heavy, and very heavy, that could be associated with a job. See 20 C.F.R. §§ 404.1567, 416.967. If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

### IV.     **The ALJ's Decision**

After reviewing the relevant evidence and weighing Plaintiff's testimony, the ALJ determined that Plaintiff's disability began on February 1, 2002. In support of his conclusion, the ALJ made the following findings. The ALJ found that Plaintiff satisfied the first step of the analysis because he had not engaged in substantial gainful activity since the alleged onset of his disability. At step two, the ALJ held that Plaintiff's medical conditions constituted a severe impairment under the Social Security Regulations. See 20 C.F.R. § 404.1520(c). Plaintiff did not meet step three, however, because his medically determinable impairments did not meet or medically equal one of the impairments in the Listing of Impairments. In making that determination, the ALJ paid close attention to the listings in sections 1.01 and 11.01, but found that the available medical evidence did not satisfy the criteria of those listings.

At step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform sedentary work prior to February 1, 2002. Relying on the relevant medical evidence in

the case record, the ALJ found that, prior to this date, Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally. Plaintiff could also stand and/or walk for two hours, sit for six hours in an eight-hour period, and occasionally balance or stoop. The ALJ also found that Plaintiff's past work-related activities were not precluded by these limitations. Based on this analysis, the ALJ concluded that Plaintiff was physically capable of performing his past work as a bank research analyst. The ALJ therefore ruled that Plaintiff was not disabled during the period of August 4, 2001 to January 31, 2002.

The ALJ also concluded that the Plaintiff's allegations of incapacitating pain since August 4, 2001 were "not totally credible" because the objective medical evidence contradicted some of those allegations. (AR 137). Nonetheless, the ALJ accepted Plaintiff's assertions concerning his inability to work since February 1, 2002 because the objective medical evidence demonstrated that Plaintiff no longer retained the residual functional capacity to perform sedentary work beyond that date. Plaintiff could stand and/or walk for less than two hours and sit for less than six hours in an eight-hour day. He was therefore unable to satisfy the requirements of his past position. The ALJ took into account limitations posed by the Plaintiff's age, education, and skill level and found that he could not make an adjustment to any work available in significant numbers in the national economy. Therefore, the ALJ held that Plaintiff became disabled on February 1, 2002.

**V.**     **Legal Analysis**

The Court must evaluate whether there is substantial evidence to support the ALJ's finding that Plaintiff possessed the residual functional capacity to perform sedentary work from August 4, 2001 to February 1, 2002. Plaintiff maintains that the ALJ's decision does not meet the substantial evidence standard because (1) the ALJ failed to articulate an evidentiary basis for his residual

functional capacity determination and (2) the ALJ did not follow the Commissioner's mandates with regard to the evaluation of Plaintiff's testimony. As explained below, the Court finds that there is substantial evidence to support the ALJ's ruling and that Plaintiff's challenges to the ALJ's decision lack merit.

### *A. The ALJ's Evaluation of the Plaintiff's Ability to Perform Sedentary Work*

Plaintiff argues that the ALJ erred in finding that Plaintiff retained the residual functional capacity to resume his previous work during the period of August 4, 2001 through February 1, 2002. Specifically, Plaintiff challenges this ruling on the grounds that the ALJ merely recited the evidence and announced his findings, without providing a sufficient evidentiary basis for his conclusions.

"Residual functional capacity" describes an assessment of an individual's remaining ability to perform work activities. 20 C.F.R. § 404.1545(a)(1). The ALJ must consider the medical evidence in the record, as well as Plaintiff's testimony and subjective allegations, when evaluating Plaintiff's residual functional capacity. See 20 C.F.R § 404.1527. Both the Administrative Procedure Act and regulations applicable to disability adjudications specify that the ALJ's decision must contain findings of fact and a statement of reasons for his decision. 20 C.F.R § 404.939 (1980); 5 U.S.C. § 557(c) (1976). In articulating his decision, the ALJ is required to "not only [give] an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

Contrary to Plaintiff's assertions, a review of ALJ Farley's written decision demonstrates that he gave due consideration to all relevant evidence of record and sufficiently articulated the bases for his conclusions regarding Plaintiff's residual functional capacity. Indeed, it is clear that

the ALJ relied on the opinion of State Agency physician Dr. Levine as support for his conclusion that, prior to February 1, 2002, Plaintiff "could lift and/or carry ten pounds frequently and twenty pounds occasionally," "stand and/or walk for two hours and sit for two hours and sit for six hours in an eight hour day," and "could occasionally balance and stoop." (AR 135). Plaintiff criticizes the ALJ for issuing what Plaintiff characterizes as a conclusory residual functional capacity finding. This criticism, however, is belied by the fact that the ALJ discussed and quoted Dr. Levine's opinion prior to rendering his conclusion that Plaintiff had the residual functional capacity to perform sedentary work until February 1, 2002.

Further, the ALJ's conclusion features the identical language that Dr. Levine used in his RFC Assessment. (See AR 134 (quoting Dr. Levine's opinion that Plaintiff "could lift and/or carry ten pounds frequently and twenty pounds occasionally. He could stand and/or walk for two hours and sit for six hours in an eight hour day. His ability to push and/or pull was unlimited. He could occasionally balance and stoop.")). It is clear, by the use of that language, that the ALJ's conclusion both incorporated and rested upon Dr. Levine's opinion.[1]

Next, Plaintiff argues that the ALJ arbitrarily selected February 1, 2002 as the onset date of Plaintiff's disability. The Court finds, however, that the opinions of Dr. Levine and Dr. Goldstein—Plaintiff's own treating physician—support the ALJ's finding of a February 1, 2002 onset date. As discussed above, the ALJ's conclusion that Plaintiff could perform sedentary work as of January 31, 2002 is consistent with Dr. Levine's opinion concerning Plaintiff's residual

---

[1] The Court notes that the Social Security Regulations permit an ALJ to rely on the medical judgment of a State Agency physician in reaching his decision. See 20 C.F.R. § 404.1513(c), 416.913(c) (the ALJ will consider State Agency medical consultants' assessments about a claimant's residual functional capacity).

functional capacity.[2]  Further, the opinion of Dr. Goldstein—the only physician who examined Plaintiff between August 4, 2001 and February 1, 2002—found that February 1, 2002 marked the worsening of Plaintiff's condition and the arrival of new symptoms: "[O]n February 1, 2002, the claimant's left leg pain became more severe.  He had low back pain, left hip and knee pain.  He had discomfort to the lumbosacral area to touch with some radiation with positive straight leg raising.  His hip was also tender to touch."  (AR 134).  Prior to February 1, 2002, Dr. Goldstein reported that Plaintiff had only "some discomfort" in his left leg and back.

Notwithstanding the foregoing evidence, Plaintiff claims that the ALJ failed to take into account the fact that he complained of pain and discomfort during a visit to Dr. Goldstein in November 2001.  During that visit, however, Plaintiff complained of "some discomfort" in his left leg and hip, which Dr. Goldstein attributed to excessive pressure on Plaintiff's left leg.  Dr. Goldstein did not find, however, that Plaintiff's condition had reached a disabling level in November 2001.  As explained above, that diagnosis came on February 1, 2002.  Thus, as the ALJ recognized and the medical evidence demonstrates, Plaintiff's condition reached a level of severity on February 1, 2002 that did not exist in November 2001.  Further, Plaintiff fails in his attempt to show that the ALJ violated Cotter's mandate that he "give an expression of the evidence he considered which supports the result, but also some of indication of the evidence which is rejected."  Cotter, 642 F.2d at 705.  Not only did the ALJ clearly articulate the evidence upon which he based his decision, but Plaintiff points to no objective medical evidence to support his

---

[2] Although Dr. Levine's opinion reflected a review of the medical evidence through the date of July 8, 2002, the ALJ considered only the portions of Dr. Levine's analysis that related to the period of time ranging from August 4, 2001 to January 31, 2002.  Therefore, there is nothing improper about the ALJ's use of Dr. Levine's opinion to determine the onset date of Plaintiff's disability.

claim of an earlier onset date.  As such, the ALJ's written decision fully complied with Cotter.  See Massaro v. Comm'r of Soc. Sec., 84 Fed Appx. 175, 179 (3d Cir. 2003) (noting that ALJ has no duty to explain rejection of contradictory evidence where no such evidence exists).

### *B. The ALJ's Consideration of Plaintiff's Testimony*

Plaintiff argues that the ALJ failed to properly credit Plaintiff's subjective complaints of pain.  Plaintiff's complaints of pain "must be given serious consideration . . ., even where those assertions are not fully confirmed by objective evidence."  Smith v. Califano, 637 F.2d 968 (3d Cir. 1981).  However, "subjective complaints of pain, without more, do not in themselves *constitute* disability," Green, 749 F.2d at 1077, unless "substantiated by medical evidence" of a "condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work."  Williams, 970 F.2d at 1186.  Even if the claimant produces such evidence, the ALJ must still evaluate the intensity and persistence of the alleged pain to determine whether and to what extent that pain limits the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  In making this determination, the ALJ has discretion to draw his own conclusions "in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quotation omitted).

At the hearing before ALJ Farley, Plaintiff testified that during the relevant period he suffered from back pain, pain in his leg and left hip, and numbness of the left foot.  (AR 148-150).  He also complained of sores and rashes that could only be relieved by removing his prosthesis for periods of time while at work.  (AR 148).  Plaintiff maintained that because of his condition he was unable to sit for longer than forty-five minutes at a time and that his constant discomfort produced by these conditions diminished his ability to concentrate on work activities.  (AR 152, 153).

Plaintiff testified that he took a prescription pain medication to alleviate his symptoms, but that this medication caused drowsiness that interfered with his ability to accomplish his tasks in an accurate and timely manner. (AR 150).

The ALJ gave serious consideration to Plaintiff's subjective complaints of pain and found them "generally credible in light of the medical evidence." (AR 136). Plaintiff asserts that this statement directly contradicts the ALJ's subsequent holding that the Plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (AR 137). The Court does not regard these statements as irreconcilable. Indeed, a reading of the opinion as a whole demonstrates that the ALJ found Plaintiff's allegations credible to the extent that they were consistent with the medical evidence in the record and rejected those allegations that were not substantiated by objective medical evidence. For instance, the ALJ rejected Plaintiff's allegations of debilitating hip and leg pain during the period between August 4, 2001 and January 31, 2002, because those allegations were inconsistent with Dr. Levine's uncontradicted report.[3] On the other hand, the ALJ credited Plaintiff's allegations concerning his limitations subsequent to January 31, 2002 because the objective medical evidence corroborated Plaintiff's claims of incapacitation. The Court finds no fault with the ALJ's credibility findings, which reflect a comparison of Plaintiff's subjective allegations to the objective medical evidence in the record.

---

[3] None of the medical evaluations by Plaintiff's physicians support his claim that, prior to January 31, 2002, he was subject to pain of the degree he alleges. Absent evidence contradicting Dr. Levine's expert assessment, Plaintiff's complaints of functional limitations due to pain could not "reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R § 404.1529(a).

Plaintiff further contends that the ALJ failed to articulate reasons for holding that Plaintiff's complaints of debilitating pain were not credible. Plaintiff correctly notes that Social Security Ruling 96-7P requires the ALJ to furnish "specific reasons for the finding on credibility, supported by evidence in the case record." SSR 96-7P, 1996 WL 374186 SSA. But the Court does not agree that ALJ Farley failed in his duty to identify the basis for his rejection of Plaintiff's allegations. The ALJ's finding that Plaintiff's "allegations regarding his limitations are not totally credible *for the reasons set forth in the body of the decision*" points to and incorporates the previously discussed evidence, such as Dr. Levine's findings concerning the onset date of Plaintiff's disability and his residual functional capacity during the disputed period. (AR 137 (emphasis added)). Thus, it is apparent that the ALJ's reason for rejecting Plaintiff's subjective allegations of debilitating pain from August 4, 2001 to January 31, 2002 is that they were in conflict with Dr. Levine's judgments regarding the severity of Plaintiff's impairments during that period. The Court therefore finds that the ALJ provided a sufficient articulation of his reasons for finding that certain of Plaintiff's subjective allegations of pain lacked credibility.

## VI.   Conclusion

For the reasons stated above, the Court affirms the Commissioner's decision as supported by substantial evidence.

/s/Joel A. Pisano
JOEL A. PISANO, U.S.D.J

Dated:  June 27, 2006